UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RENATA SHILOAH, *on behalf of herself
and all others similarly situated,*

                Plaintiff,

v.

GEICO INDEMNITY COMPANY,

                Defendant.
_____

**DECISION AND ORDER**

6:24-CV-06447 EAW CDH

## INTRODUCTION

Plaintiff Renata Shiloah ("Plaintiff") brings this putative class action suit against defendant GEICO Indemnity Company ("Defendant" or "GEICO"), asserting a claim for breach of contract based on Defendant's failure to pay sales tax as part of the "Actual Cash Value" or "ACV" for total loss vehicles. (Dkt. 1).

Defendant has filed a motion to compel appraisal of Plaintiff's total loss vehicle and stay this case pending the result of the appraisal. (Dkt. 19). For the reasons discussed below, Defendant's motion is denied.[1]

## BACKGROUND

Plaintiff was involved in an accident while driving a leased vehicle that was insured under a policy issued by GEICO. (Dkt. 1 at ¶¶ 19-21). Plaintiff subsequently filed a claim, and her vehicle was determined to be a total loss. (*Id.* at ¶ 21). Plaintiff

---

[1] The defendant in the related action *Marcelletti v. GEICO General Insurance Company*, No. 6:23-CV-06211, has filed a similar motion. The Court addresses the motion to compel appraisal in *Marcelletti* in a separate Decision and Order.

alleges that GEICO's payment of ACV—defined in her policy as "the replacement cost of the auto or property less depreciation or betterment"—to settle her claim did not include sales tax. (*Id.* at ¶¶ 17, 24-25). Plaintiff asserts that GEICO breached its policy with Plaintiff and other members of the putative class by failing to pay sales tax as part of the ACV for total loss vehicles. (*Id.* at ¶¶ 30-32).

Plaintiff's policy with GEICO contains an appraisal provision ("Appraisal Provision") that reads:

> If we and the ***insured*** do not agree on the amount of ***loss***, either may within 60 days after proof of ***loss*** is filed, demand an appraisal of the ***loss***. In that event, we and the ***insured*** will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the ***actual cash value*** and the amount of the ***loss***. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of ***loss***. We and the ***insured*** will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.
>
> We will not waive our rights by any of our acts relating to appraisal.

(Dkt. 20-1 at 19) (bold and italics in original and denoting defined terms in the policy). Defendant moves to compel appraisal of Plaintiff's total loss vehicle pursuant to the Appraisal Provision and stay this case pending the result of the appraisal. (Dkt. 19).

Plaintiff filed her claim with GEICO on or about December 28, 2018. (Dkt. 1 at ¶ 21; Dkt. 23 at 27). Nevertheless, Defendant argues that its demand for an appraisal—which it first made on August 25, 2024, nearly six years after Plaintiff submitted her claim—is timely. (Dkt. 20 at 7). This is because, in Defendant's view, the 60-day deadline to demand appraisal set forth in the first sentence of the Appraisal Provision did not start running until Plaintiff filed her complaint in this

action on July 17, 2024. (*Id.* at 6). Defendant contends that a "dispute over the amount of loss is the required precondition that gives rise to the Policy's mandatory Appraisal provision." (*Id.* at 7). According to Defendant, Plaintiff's filing of her complaint was the first time that she and GEICO disagreed on the amount of loss as to her vehicle. (*Id.*).[2] Under this theory, GEICO's right to demand appraisal only became ripe on July 17, 2024. (*Id.* at 7). Hence, its demand for an appraisal on August 25, 2024—19 days later—was timely.

Plaintiff, on the other hand, argues that the 60-day deadline to demand appraisal started running when Plaintiff submitted "proof of loss," an undefined term in the policy that she argues "refers to the evidence that the policyholder submits to GEICO to establish that the insured vehicle for which an insurance claim has been made was actually lost or damaged." (Dkt. 23 at 21). According to Plaintiff, she submitted this evidence to GEICO on or about January 15, 2019, when GEICO provided her with a "Total Loss Settlement Explanation," apprising her of the amount GEICO would pay to settle her claim. (*Id.* at 22). Therefore, in Plaintiff's view, Defendant's demand for appraisal is untimely.

After the instant motion had been briefed (*see* Dkt. 20; Dkt. 23; Dkt. 24), the Court of Appeals for the Second Circuit issued a summary order in *Milligan v. GEICO*

---

[2]  Contrary to Defendant's theory, Plaintiff's position is that there is no disagreement in this case over the value of her total loss vehicle. (*See* Dkt. 23 at 17). Rather, the remedy she seeks is to require GEICO to pay sales tax, calculated as a percentage of the already-determined (*i.e.*, undisputed) amount of loss pursuant to a tax rate set by state law. (*See id.*). As explained below, this motion can be resolved purely on timeliness grounds, so the Court does not reach this issue.

*General Insurance Company*, No. 22-2950, 2025 WL 799276 (2d Cir. Mar. 13, 2025) ("*Milligan*"), which resolved appeals from two district court orders denying a GEICO-affiliated entity's invocation of the right to compel appraisal in separate putative class actions involving the same policy terms and Appraisal Provision at issue here. *See Milligan*, 2025 WL 799276, at *1. Plaintiff thereafter filed a notice of supplemental authority, noting that the Second Circuit in *Milligan* had endorsed her interpretation of the Appraisal Provision and, accordingly, found the *Milligan* defendants' demands for appraisal to be untimely. (Dkt. 41 at 1-2).

Defendant responded to Plaintiff's notice of supplemental authority, arguing that Plaintiff's reliance on *Milligan* is "misplaced," as "the Second Circuit's ruling hinged on an ***assumption*** that the [plaintiffs in those cases] 'filed a proof of loss before receiving [] payment.'" (Dkt. 43 at 1) (emphasis and second alteration in original and quoting *Milligan*, 2025 WL 799276, at *5). Defendant claims that Plaintiff, by contrast, did not submit proof of loss to GEICO before receiving payment. (*Id.*). Plaintiff filed a reply, disputing Defendant's assertion that the facts in this case make *Milligan* distinguishable. (*See* Dkt. 44 at 1-2).

## DISCUSSION

### I. Scope of Magistrate Judge Authority

The Second Circuit has concluded that the Appraisal Provision at issue here "constitutes arbitration for the purpose of the [Federal Arbitration Act]." *Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146, 152 (2d Cir. 2019); *see also Chick v. GEICO Gen. Ins. Co.*, No. 24-CV-01124 (JMA) (AYS), 2024 WL 3303266, at *3 n.3 (E.D.N.Y. July

2, 2024) ("A motion for appraisal constitutes a motion to compel arbitration."). "District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 626(b)(1)(B) and Fed. R. Civ. P. 72(b)." *Puig v. City of N.Y.*, 733 F. Supp. 3d 218, No. 23-CV-08674, 2024 WL 2007829, at *1 n.1 (S.D.N.Y. May 7, 2024) (quoting *McCants v. Team Elec., Inc.*, No. 19-CV-095656 (AJN) (RWL), 2021 WL 653122, at *1 n.1 (S.D.N.Y. Feb. 19, 2021)); *see also Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 227 (S.D.N.Y. 2020) (collecting cases), *objections overruled*, No. 10-CV-6950, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021). Accordingly, my resolution of this motion is set forth in a Decision and Order.

## II.   Legal Standard

Courts deciding motions to compel arbitration "apply a standard similar to that applicable for a motion for summary judgment," in that they "consider[] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits" and "draw[] all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quotations and original alterations omitted). If the Court concludes that an agreement to arbitrate exists, "it should then consider whether the dispute falls within the scope of the arbitration agreement." *Id.* (citation omitted). The Court applies New York law in interpreting the Appraisal

Provision, including the necessary timing for exercising the right to appraisal. *See Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 199 (2d Cir. 2012).

### III. *Milligan* is Dispositive of Defendant's Motion

Like Plaintiff here, the three plaintiffs in *Milligan* each had an automobile insurance policy with a GEICO-affiliated entity on which they sought to collect after their cars were involved in accidents. *Milligan*, 2025 WL 799276, at *1. The policies all contained the same Appraisal Provision quoted above. *See id.* at *1-2. The insurer declared each vehicle a total loss and issued payments to the plaintiffs. *Id.* at *2. Months later, two of the plaintiffs brought separate putative class actions, alleging that the defendant had undervalued the amount of loss for their vehicles. *Id.* The third plaintiff, whose claim was settled years earlier, joined one of the actions. *Id.* Within 60 days of each plaintiff's initiation or joining of a lawsuit, the defendant demanded an appraisal pursuant to the Appraisal Provision. *Id.* In both cases, the plaintiffs rejected the defendant's demand and the defendant sought to compel appraisal. *Id.* In each case, the district court concluded that the defendant's demand for appraisal was untimely. *Id.* at *2-3.

On appeal, the Second Circuit found that the timeliness issue "ultimately turn[ed] on the singular question of how to construe the first sentence of the Appraisal Provision, which states: 'If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of *loss* is filed, demand an appraisal of the *loss*.'" *Id.* at *4. The *Milligan* defendants, like Defendant here, argued that the 60-day deadline does not start running until a disagreement arises between the

insurer and the insured over the amount of loss, and that such disagreement first arose when the plaintiffs filed or joined in their respective suits. *Id.* The plaintiffs, just like Plaintiff here, argued that the insurer's contractual right to demand appraisal was limited to the 60-day period after proof of loss was filed, which, according to the plaintiffs, occurred in proximity to when their claims were settled, months or years before their suits were commenced. *Id.*

The Second Circuit concluded that "[a] review of the Appraisal Provision and the language of the policies leaves little doubt that Plaintiffs have the better interpretive argument." *Id.* Specifically, the court found that filing proof of loss is the unambiguous triggering event for the 60-day deadline. *Id.* And as to when proof of loss is filed, the court endorsed the conclusion that "GEICO's payment on Plaintiffs' claims constituted the 'latest possible proof of loss date.'" *Id.* at *5 (quoting *See v. Gov't Emps. Ins. Co.*, No. 21-CV-00547 PKC JMW, 2022 WL 2467695 (E.D.N.Y. Mar. 22, 2022), *adopted,* 2023 WL 2731697 (E.D.N.Y. Mar. 30, 2023) and emphasis added). The Second Circuit explained that this conclusion is:

> consistent with both (1) the ordinary meaning of "proof of loss" as a precondition to payment by the insurer, and (2) each policy's requirement that insureds file a proof of loss within ninety-one days after loss. Because each of the Plaintiffs received a payment of loss from GEICO, we must assume that each filed a proof of loss before receiving that payment.

*Id.* The *Milligan* defendants' demands for appraisal were therefore untimely because they came more than 60 days after payment on plaintiffs' claims. *Id.*

Contrary to Defendant's argument, *Milligan* is directly on point and dispositive of Defendant's motion. The instant motion involves the interpretation of the same

policy terms and Appraisal Provision, and the arguments raised by the parties here are virtually identical to those raised in *Milligan* (where the defendants were represented by the same counsel representing Defendant in this case).

Thus, applying the Second Circuit's holding in *Milligan*, the Court finds that Defendant's demand for appraisal is untimely. Though the exact date of GEICO's payment on Plaintiff's claim appears to be unknown to Plaintiff,[3] GEICO sent Plaintiff a Total Loss Settlement Explanation on or around January 15, 2019, explaining that GEICO would pay $15,666.00 to settle her claim. (Dkt. 23 at 21; Dkt. 1-1 at 52-53). And it is undisputed that GEICO thereafter made a payment of $15,666.00 to settle Plaintiff's claim. (*See* Dkt. 42 at ¶ 24).

Because GEICO made this payment, the Court must conclude that Plaintiff filed proof of loss before payment was made. *See Milligan*, 2025 WL 799276, at *5. As for when proof of loss was filed, even though the date of payment constitutes the "latest possible proof of loss date," *id.*, the Court finds that GEICO's sending Plaintiff a Total Loss Settlement Explanation that apprised her of the amount of the forthcoming payment must also give rise to the conclusion that she filed proof of loss no later than the date of that document. Therefore, the Court, consistent with *Milligan*, will treat the deadline to demand appraisal as 60 days from on or around January 15, 2019.

---

[3] According to Plaintiff's complaint, GEICO made the full payment on her claim to her leasing company. (*See* Dkt. 1 at ¶ 24).

Defendant argues that *Milligan* is distinguishable because, there, the Second Circuit assumed that the plaintiffs filed proof of loss before receiving payment, whereas here, "the undisputed evidence before this Court is that 'Plaintiff did not submit proof of loss to GEICO prior to GEICO's issuance of the $15,666.00 payment to settle Plaintiff's claim'" (Dkt. 43 at 1) (quoting Dkt. 20-1 at 52) (Declaration of Kevin Costigan in Support of GEICO Indemnity Company's Motion to Compel Appraisal and Stay Pending Appraisal).

The Court disagrees. The purported "undisputed evidence before this Court" is a declaration by a GEICO employee stating both that Plaintiff did not submit proof of loss prior to GEICO making a payment on her claim and that GEICO did not require Plaintiff to submit proof of loss as a precondition to payment. (Dkt. 20-1 at 52). As an initial matter, since the Appraisal Provision "unambiguously identifies the filing of a proof of loss as the triggering event for the sixty-day timeline," *see Milligan*, 2025 WL 799276, at *4, accepting Defendant's claim that no proof of loss was ever filed would mean that its contractual right to demand appraisal could not yet be ripe. Moreover, Defendant's assertion that it did not require Plaintiff to submit proof of loss as a precondition to payment is contrary to both the ordinary meaning of "proof of loss" as a precondition to payment and the policy's requirement that the insured file proof of loss within 91 days after loss. *See id.*

More importantly, Defendant still "does not explain . . . what, in its view, would constitute 'proof of loss' under the Appraisal Provision." *See id.* at *5. Nevertheless, it asserts that "Plaintiff [] does *not* allege she submitted anything, under oath or in

- 9 -

writing, that even remotely resembles 'proof of loss' as contemplated in the Policy's Appraisal provision." (Dkt. 20 at 6). But this assertion presumes that the Appraisal Provision contemplates some specific form of proof of loss—though what form specifically, Defendant avoids explaining. The Second Circuit in *Milligan* clearly endorsed the view that the Appraisal Provision requires only the "the ordinary meaning ascribed to the term 'proof of loss' as '[a]n insured's formal statement or documentation of loss required by an insurer before it will determine its liability under the policy.'" *Milligan*, 2025 WL 799276, at \*5 (quoting Black's Law Dictionary (12th ed. 2024)); *see also Milligan v. GEICO Gen. Ins. Co.,* No. CV 16-240 (JMA)(GRB), 2017 WL 9939046 (E.D.N.Y. July 14, 2017) ("The policy does not specifically define that which constitutes a 'proof of loss,' other than that which can be deduced from [the policy's requirement that the insured '[f]ile with us, within 91 days after loss, his sworn proof of loss including all information we may reasonably require'], to wit: information reasonably required to ascertain the loss."), *adopted*, 2018 WL 3632690 (E.D.N.Y. Mar. 31, 2018). This is virtually identical to the meaning of proof of loss that Plaintiff sets forth here. (*See* Dkt. 23 at 20-21). Against this, Defendant does not offer the Court any concrete way to understand proof of loss other than the ordinary meaning utilized by Plaintiff, the Second Circuit, and multiple district courts. Defendant's inability to offer a concrete explanation of what would actually constitute proof of loss—despite the extensive litigation that has occurred surrounding this topic—is incompatible with its contention that this matter is distinguishable from *Milligan*.

Plaintiff is ultimately entitled to the same conclusion as the plaintiffs in *Milligan*—that she filed proof of loss before receiving payment. In *Milligan*, the Second Circuit did not baselessly "assume" that the plaintiffs filed proof of loss. Rather, the court made a logical inference: because the plaintiffs each received a payment of loss from GEICO, the plaintiffs, *ipso facto*, each filed proof of loss before receiving payment. *See Milligan*, 2025 WL 799276, at *5. One of the underlying district court cases that was affirmed in *Milligan* makes this clear:

> While the parties tussle over what should constitute the proof of loss in this case, the indisputable facts give rise to the inference that, however one might define a proof of loss under this particular policy, plaintiff must have complied with this policy requirement because GEICO paid more than $45,000 as a result of the information provided by plaintiff.

*Milligan*, 2017 WL 9939046, at *10 (E.D.N.Y. July 14, 2017). Defendant's payment on Plaintiff's claim under her GEICO policy—which contains the same relevant terms as the policies in *Milligan*—necessarily gives rise to the inference that Plaintiff also filed proof of loss before payment was made. *See Milligan*, 2025 WL 799276, at *5 ("Because each of the Plaintiffs received a payment of loss from GEICO, we *must* assume that each filed a proof of loss before receiving that payment) (emphasis added).

In sum, the Court concludes that Plaintiff filed proof of loss by no later than January 15, 2019, the date on which Defendant advised her of the amount of the forthcoming payment. Consequently, Defendant's demand for appraisal on August 25, 2024, over five years later, was untimely under the Appraisal Provision. Defendant's motion to compel appraisal must therefore be denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion to compel appraisal (Dkt.19) is denied. Because the Court's decision is based on timeliness grounds, it need not and does not reach any of the other issues raised by the parties in their motion papers.

**SO ORDERED**.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: Rochester, New York
April 11, 2025